## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Jonathan Mayfield, being first duly sworn, hereby depose and state as follows:

### Agent Background and Purpose of Affidavit

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of one electronic device—described below and in Attachment A—that is currently in law enforcement's possession and the seizure from that device of the electronically stored information described in Attachment B. This warrant application arises from Border Patrol's contact with Geovanny GARCIA GARCIA on December 9, 2022, in the District of Vermont.

2. The item to be searched is a black Samsung Galaxy wireless cell phone with a rubberized black case ("the Device"). The Device is currently located in the evidence safe at the U.S. Border Patrol Newport Station located at 373 Citizens Road in Derby, Vermont. Based on my training and experience, the Device has been stored in a manner such that the data on it are likely to remain intact and in the same condition as they were at the time of the Device's seizure. The applied-for warrant would authorize the forensic examination of the Device for the purpose of seizing electronically stored data, particularly described in Attachment B, that would evidence human-smuggling and immigration violations by the user of the Device—specifically, violations of 8 U.S.C. §§ 1324 and 1325.

3. I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security, Office of Border Patrol. I have been employed as a BP agent since August 2011. I am currently assigned as the Newport Station Prosecutions Agent, and I work at the Newport Border Patrol Station in Newport, Vermont. I received formal training to identify and investigate alien smuggling activities both at the United States Border Patrol Academy in Artesia, New Mexico,

1

and through regular and recurring on-the-job training and annual Virtual Learning Center course certification.

4. Based on my training and experience, I am aware that individuals working together to commit border-related crimes often use their cellular phones to contact one another, to research related topics, to navigate while driving, and to coordinate meeting locations. In my investigations of many alien smuggling and narcotics smuggling cases, electronic devices were commonly used to facilitate the smuggling event by coordinating transportation and by guiding both the smugglers and the receiving load driver via global positioning system (GPS) applications and verbal and/or non-verbal communications. For example, individuals coordinating smuggling events will frequently send map coordinates ("pins") or screenshots of maps to both the aliens crossing the international border and the driver waiting to pick them up. These tasks are frequently necessary in the Swanton Sector Area of Responsibility (AOR); given the remote and rural nature of the AOR, arranging meetings at precise times and navigating to locations unlikely to appear on printed maps often requires the use of cellular devices. Further, I am aware that cellular phones and the cellular network often generate and record data without the phone users necessarily being aware of or able to delete the data.

5. The information contained within this affidavit is based upon my training and experience, upon my own investigative efforts, and upon investigation by other law enforcement officers with whom I have spoken or whose reports I have reviewed. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below. It is meant to set forth probable cause to believe that the violations occurred and that evidence of the violations will be found on the Device, and it does not include every fact known to law enforcement about the events described below. Unless otherwise

specified, the statements described in the following paragraphs are related in sum and substance and are not meant to as direct quotations or complete descriptions.

## Probable Cause

6. On December 9, 2022, Swanton Sector Tactical Communications Center ("Dispatch") received images of multiple subjects walking south through a wooded area near the Goodall Farm in Holland, Vermont from remotely operated cameras. These cameras are activated by motion within their field of view; the camera automatically records images when motion is detected and transmits them to USBP computer systems, where they can be viewed by USBP personnel in an operations center. Dispatch then relays descriptions of the images to agents in the field to respond. USBP agents place cameras, such as the ones discussed here, in areas known to have been used by smugglers or undocumented aliens attempting to cross the border without inspection by immigration officers. Based on the direction of travel of the subjects, the location of the remote sensors, and the subjects' attire, it appeared the subjects had illegally entered the United States from Canada.

7. Newport Border Patrol Agents responded to the area to locate the subjects. While searching for subjects, Supervisory Border Patrol Agent (SBPA) J. Marquissee and I observed a vehicle "slow rolling" (driving well below the speed limit, as if the driver is looking for something along the road) while it was traveling east along Goodall Road near the intersection of Moon Road. Goodall Road is a generally east-west road that roughly parallels the international border with Canada. On the Canadian side of the border in this vicinity, an east-west road (Chem Lagueux) runs directly adjacent to the border for over half a mile. Where Goodall Road and Moon Road intersect, Goodall Road is approximately a half mile south of the international border. A map of the area appears below. I and other agents in the Newport Station area of

3

responsibility are aware that the Goodall Road and Moon Road area has been used recently and frequently for human smuggling attempts.



8.   SBPA Marquissee and I stepped off the side of the road while the SUV passed our location near Moon Road. As the vehicle passed SBPA Marquissee's location, he illuminated his flashlight and pointed it at the vehicle. SBPA Marquissee noticed the vehicle was a black 4-door SUV with Massachusetts registration that started with "1S," but he was unable to see and recall the rest of the license plate. SBPA Marquissee also noticed that the sole visible occupant of the SUV appeared to be the driver. SBPA Marquissee continued to observe the ve-hicle while he was running east along the road to maintain visual contact with it, while I made my way back to my service vehicle. As SBPA Marquissee ran east, he noticed the suspect vehicle slow down near the sugar tank at the driveway of the Goodall Farm. The SUV illuminated its hazard lights and turned them off multiple times, and it flashed its headlights multiple times as it slowed

4

my training and experience, both of those methods are commonly used by transporters in this area to signal illegal entrants waiting in the woods that this is the vehicle sent by the smuggling organization to pick them up.

9. I started my vehicle and began to drive toward the SUV. As I got closer to the SUV, the vehicle turned off its signals and accelerated quickly, again traveling east along Goodall Road. I caught up to the vehicle and activated my emergency equipment to initiate an investigatory stop. I approached the driver's window, identified myself as a Border Patrol Agent, and questioned the driver as to his citizenship. The driver—who was later identified as Geovanny GARCIA GARCIA (year of birth 1993)—claimed he was a lawfully admitted permanent resident (LAPR) in the United States. Record checks through Dispatch later confirmed his LAPR status as an immigrant from the Dominican Republic. GARCIA GARCIA claimed he was in the area for a party and that he did not know exactly where it is.

10. While I was speaking with GARCIA GARCIA, I could see his cell phone (the Device) mounted by the driver's side door. Multiple WhatsApp messages came through as I was speaking with him, and they appeared to be sent in rapid succession. WhatsApp is presently one of the most commonly used applications for organizing and planning of smuggling events in the Newport Station AOR. I also observed that a map application was showing on the Device's screen, and it appeared to show the marked location where he slowed down to flash his lights. I did not believe his story about looking for a party, and I detained him for further investigation.

11. Agents assigned to the Newport Station continued to search for subjects in the woods near the initial activations and the vehicle stop location. While they were searching, Dispatch received additional images now showing the subjects walking back north. The location of the remote camera activation was approximately 100 yards from the location of the vehicle

5

stop. SBPA Marquissee and BPA Ashburner responded to the area of the activations and searched the woods. SBPA Marquissee observed two subjects attempting to conceal themselves next to a tree. He approached the subjects, identified himself as a U.S. Border Patrol Agent, and questioned both subjects to their countries of citizenship. Both subjects stated that they were citizens and nationals of Mexico with no immigration documents to enter, remain in, or transit through the United States legally. SBPA Marquissee placed both subjects under arrest for illegally entering the United States. Based on the location of the subjects at the time of their arrest, it appears likely that GARCIA GARCIA was in the area to pick them up and drive them further into the United States. The aliens and GARCIA GARCIA were transported to the Newport Station for further investigation and processing.

12. Border Patrol Agent–Intelligence (BPA-I) J. Manney and I interviewed GARCIA GARCIA at the Newport Station. After we read him his *Miranda* rights, he agreed to waive those rights and answer questions without a lawyer present. The interview was recorded. GARCIA GARCIA claimed that he drove almost three hours from Lynn, Massachusetts to attend a party near "Exit 27" in the Newport, Vermont area. He stated that he did not know anyone in the area or know where the party was located. GARCIA GARCIA then claimed he kept driving and took Exit 29 off Interstate I-91 because he had no identification on him that would allow him to enter Canada. GARCIA GARCIA then claimed he pushed a random point into his map application that he believed would be near the party. During the interview, GARCIA GARCIA denied having stopped and flashed his lights. BPA-I Manney and I asked if he would consent to us searching his phone, but GARCIA GARCIA appeared to become defensive. He declined to show us anything on his phone other than the history of his google maps application.

## Conclusion and Requests

13. Based on the foregoing information, I submit there is probable cause to believe that at least two citizens of Mexico (aliens to the United States) illegally entered the United States on or about December 9, 2022, in violation of 8 U.S.C. § 1325(a), and that Geovanny GARCIA GARCIA attempted to transport the aliens in furtherance of their illegal entry while knowing or recklessly disregarding the fact that they were aliens who had illegally entered the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). I further submit there is probable cause for the issuance of a search warrant authorizing the examination of the Device seized from GARCIA GARCIA, further described in Attachment A, and the seizure therefrom of data described in Attachment B.

14. This warrant seeks only permission to examine a device already in law enforcement's possession, so execution of this warrant would not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this 22 day of December 2022.

_____
Jonathan Mayfield, Border Patrol Agent
United States Border Patrol

Subscribed and sworn to before me on December 22, 2022

_____
Hon. Kevin J. Doyle, Magistrate Judge
United States District Court
District of Vermont